**In the United States District Court
for the District of Kansas**

Case No. 20-cr-40004-TC

United States of America,

*Plaintiff*

v.

Shawn Lamar Whitmore, Jr.,

*Defendant*

## MEMORANDUM AND ORDER

The United States charged Shawn Lamar Whitmore, Jr., with one count of bank robbery under 18 U.S.C. § 2113(a)(d) and one count of using, carrying, and brandishing a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). Doc. 11 at 1–2. Whitmore moves to exclude evidence obtained during his arrest, Doc. 47, and from his cell phone, Doc. 49. For the following reasons, Whitmore's motion to exclude evidence from his arrest is denied, and Whitmore's motion to exclude evidence from his cell phone is granted in part and denied in part.

### I

### A

A lone gunman robbed the Intrust Bank on December 28, 2019, and took $69,054.11. During the robbery, bank employees witnessed the suspect speaking with someone on his cell phone as if he were communicating with an accomplice. The suspect stole one of the bank employee's cars and ultimately evaded capture. Authorities later on came to believe that Whitmore was responsible for the robbery and, following his arrest, filed charges against him. Doc. 1.

Whitmore personally appeared at the April 22, 2021, hearing on his two suppression motions. Doc. 70. During that hearing, the Government presented four witnesses: FBI Task Force Officer Patrick Salmon, Topeka Police Department ("TPD") Detective William Ackerly, Kansas Highway Patrol ("KHP") Josh McQuitty, and former FBI Task Force Officer Sam Harvey. The parties successfully moved for the admission of three exhibits: Gov. Ex. 1, Gov. Ex. 2, and Def. Ex. 100.

A few days after the hearing, Defendant submitted a notice of authority to address the collective-action doctrine he raised during the hearing. Doc. 71. That same day, the Tenth Circuit issued a decision directly addressing arguments similar to those raised by the parties. *See United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021). The parties were invited to submit supplemental briefs addressing that decision. Doc. 72. Both did, and the Court has considered those additional briefs. Docs. 74 & 78.

## B

Whitmore makes two basic Fourth Amendment arguments. First, he contends that his arrest—and, therefore, the resulting search of his person and vehicle—was unreasonable because it was performed without a warrant. Doc. 48 at 3. Second, he contends that a subsequent warrant, which permitted a search of his mobile phone, was invalid. He argues the warrant failed to justify any basis for seeking evidence that might show he was involved in other, unrelated commercial robberies and because the execution exceeded the defined scope because the warrant did not specifically authorize searching any data (*e.g.*, internet search history) beyond communications, photos, and videos. Doc. 50 at 8–10. The following describes only the facts pertinent to the legal issues raised. *See, e.g., United States v. Snow*, 82 F.3d 935, 942 (10th Cir. 1996) (factual findings of district court accepted unless clearly erroneous).

**1.** A few days after the Intrust Bank was robbed, Whitmore's father ("Whitmore Sr.") went to the TPD to report that his son may be responsible for the robbery. His suspicion was aroused when law enforcement released images of the robber on social media that he believed looked like his son. He also gave TPD a sum of money that Whitmore had recently and unexpectedly given him, a torn money band that was later connected to Intrust Bank, and a gun he thought Whitmore used in the robbery.

According to an affidavit that FBI Task Force Officer Sam Harvey later filed, the TPD and FBI agents made Whitmore their primary suspect in the Intrust robbery based on those items and on additional information Whitmore Sr. provided. Whitmore Sr. claimed he saw his son and two other people in his garage after the robbery. And Whitmore Sr. claimed to find a gun he thought was used in the robbery in Whitmore's laundry basket in his room at Whitmore Sr.'s house. Whitmore Sr. also showed the investigators a text conversation in which Whitmore advised his father not to say anything to anyone about the bank robbery when questioned.[1] With Whitmore Sr.'s consent, TPD searched the garage and Whitmore's bedroom. During the search, TPD discovered numerous large paper clips in the garage.

Based on the information Whitmore Sr. provided, TPD sought and received a state-court-issued "ping warrant" to locate Whitmore's cell phone. That search located Whitmore near Denver, Colorado, traveling east on Interstate 70. Armed with that location data, Salmon notified KHP that they were seeking a specific car thought to contain Whitmore, who they believed had committed the Intrust Bank robbery. KHP passed that information to Lieutenant Josh McQuitty, who was parked on I-70 near where the ping returned Whitmore's location. McQuitty spotted the car and performed a "felony stop" around 2:29 p.m. at mile marker 60 in Thomas County, Kansas.

After stopping the vehicle, McQuitty immediately handcuffed the driver (Whitmore), searched his pockets, and seized his wallet. McQuitty confiscated an unknown amount of money. Before towing the vehicle, troopers also performed an inventory search by photographing what they found in the vehicle, including more cash and a handgun. Later that evening, McQuitty obtained a search warrant for the vehicle from a state-court judge in Thomas County.

Unbeknownst to the KHP Troopers at the time of the arrest, FBI officers had applied for an arrest warrant earlier that day. By coincidence, a federal magistrate judge had approved and signed that warrant

---

[1] During the hearing, it became clear that there may be credibility issues relative to Whitmore Sr.'s motivation and/or ability to recall details. There was, however, no evidence suggesting that any of the law enforcement officers harbored any misgivings about the information when it was provided.

around 2:30 p.m. Salmon testified that he received the signed warrant around 2:44 p.m.

**2.** Months later, Harvey applied for and received another warrant to search Whitmore's iPhone S, Model A1633. Doc. 50-2 at 3. The warrant not only authorized a search of Whitmore's phone for evidence associated with the Intrust Bank robbery but also records including the "types, amounts taken, dates, places, and amounts of specific targeted commercial business locations associated with armed robberies" and "any information related to witnesses or co-conspirators of robberies." *Id.* at 4.

Whitmore contends the search of his cell phone violates the Constitution in two distinct ways. Doc. 50 at 3–13. First, he argues the warrant is insufficiently particular because it permits searching all the phone's contents, including things like internet search history. Second, he argues it is overbroad because Harvey's affidavit failed to provide any facts to establish probable cause to investigate other, unrelated, and unspecified robberies.

Harvey's supporting affidavit explained the circumstances causing him to believe Whitmore committed the Intrust robbery. Doc. 50-1. Among other things, the affidavit described how cell phones are generally used to plan, execute, and conceal criminal acts, and specifically stated that the Intrust robbery suspect appeared to use his cell phone to communicate with an accomplice during the robbery. But the affidavit did not—as Harvey conceded at the suppression hearing—include any facts or circumstances surrounding other commercial robberies or why he believed Whitmore might be connected to them. Nor did the affidavit describe or explain the basis for Harvey's decision to include evidence of other robberies in the requested search list. The Magistrate Judge issued the search warrant as requested based solely on the affidavit.

Based on that warrant, law enforcement seized all the phone's contents to search for the specified information, including the commercial robbery material. Counsel explained at the hearing that certain evidence unrelated to the Intrust robbery was located under the "other robberies" subsections and, unless suppressed, will likely lead to additional charges against Whitmore.

## II

Whitmore's motions are granted in part and denied in part. Specifically, his motion to exclude evidence from his arrest is denied. With respect to the search of the cell phone, the affidavit provides no probable cause for seeking evidence of other, unspecified commercial robberies. But, because those provisions are severable, the remaining evidence obtained from the search of his phone is permissible.

### A

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As a result, an arrest under a warrant authorized by a neutral, detached magistrate is presumptively reasonable. *See Katz v. United States*, 389 U.S. 347, 357 (1967). Although a warrant for Whitmore's arrest might have been approved when McQuitty placed him under arrest, the Government concedes McQuitty was unaware of the warrant until after the arrest occurred. As a result, this was a warrantless arrest.

A warrantless arrest is reasonable under the Fourth Amendment if there is probable cause to believe that a felony criminal offense has been or is being committed. *See generally United States v. Watson*, 423 U.S. 411, 417–18 (1976). Probable cause exists when the facts, circumstances, and knowledge sufficiently supported a prudent law enforcement officer's belief—evaluated in light of how those circumstances would appear to a trained officer—that the arrested individual had committed the particular offense. *See generally United States v. Cruz*, 977 F.3d 998, 1004 (10th Cir. 2020), *cert. denied*, No. 20-7423, 2021 WL 1241017 (S. Ct. Apr. 5, 2021) (citing, *e.g.*, *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). This standard is satisfied when, based on the totality of the circumstances, there is a probability or substantial chance of criminal activity; it does not require an actual showing of such activity. *Id.*

**1.** Whitmore's request for suppression is denied because, even assuming he was arrested in the moments before the warrant was issued, there was probable cause to arrest him for the Intrust robbery. Whitmore Sr. not only identified Whitmore as the Intrust robbery suspect shown in social media photos, but he also provided significant information plausibly connecting his son to that robbery. Law enforcement largely corroborated his information through a brief

investigation.[2] That established probable cause. *See United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.").

At the hearing, Whitmore suggested that even if the FBI had probable cause to arrest, McQuitty—who arrested him—did not. *See also* Doc. 71 at 2–3. Tenth Circuit precedent forecloses that argument. *See United States v. Chavez*, 534 F.3d 1338, 1348 (10th Cir. 2008). In *Chavez*, the Tenth Circuit held that where one officer has "all the requisite probable cause components," he can impute that information vertically to another officer. *Id.* at 1347. Under the "collective knowledge doctrine," an officer can reasonably initiate a traffic stop and search under the Fourth Amendment's automobile exception—even without knowing the facts giving rise to the probable cause—when another officer directs them to. *Id.* at 1345–46; *see also United States v. Whitley*, 680 F.3d 1227, 1234–35 (10th Cir. 2012).

The hearing confirmed that McQuitty's arrest was justified. Salmon testified that he asked KHP officers to look for an eastbound vehicle (which he described) on I-70 because the FBI believed a bank-robbery suspect named Shawn Whitmore, Jr. was using it. *See also* Doc. 48 at 1. Salmon further informed KHP that the FBI obtained a state court warrant for GPS pings from Whitmore's cell phone and was monitoring it as he traveled into Kansas. McQuitty testified that his captain told him the car contained a possibly armed bank-robbery suspect, to stop the vehicle if he could, and to hold the occupants for the FBI. McQuitty and his troopers complied and, ultimately, McQuitty observed the vehicle, stopped it, and, upon confirming that one occupant was Whitmore, arrested him. McQuitty therefore had an adequate basis to rely on the FBI's probable cause to arrest Whitmore. *See United States v. Latorre*, 893 F.3d 744, 754–56 (10th Cir. 2018) (applying the collective knowledge doctrine to support a stop even though there were arguably four distinct vertical relationships).

**2.** Whitmore also alleges that any evidence seized following his arrest should be suppressed. Those arguments likewise fail.

---

[2] For example, Salmon testified that large paper clips found in Whitmore Sr.'s garage are commonly used to secure currency, and the affidavit states that Intrust Bank confirmed that the money band Whitmore Sr. gave to Ackerly came from Intrust.

For one thing, searching Whitmore at the scene was a permissible search incident to a lawful arrest. Whitmore concedes as much. Doc. 48 at 3. As a result, there is no basis to suppress any of the evidence allegedly seized from his pockets at that time, including his wallet and an unknown amount of currency. *See id.* at 2.

So, too, was the subsequent vehicle search. That search proceeded in two phases. McQuitty testified that he called a tow vehicle to remove Whitmore's car from I-70, conducted an inventory search per KHP's policy before the tow truck arrived, and then personally observed the car's delivery to the Thomas County Sheriff's office. That inventory search was reasonable. *See United States v. Taylor*, 592 F.3d 1104, 1108 (10th Cir. 2010) (citing *Colorado v. Bertine*, 479 U.S. 367, 374 (1987)).

Additionally, the search of the vehicle once it had been removed from the interstate highway was permissible. McQuitty sought and obtained a warrant from a state court judge in Thomas County, Kansas, which authorized a vehicle search for evidence of both bank robbery under 18 U.S.C. § 2113(d) and unlawful distribution of controlled substances under Kan. Stat. Ann. § 21-5705. Gov. Ex. 4. Seizure of evidence under that warrant was permissible. *See California v. Acevedo*, 500 U.S. 565, 579 (1991) (police need only probable cause to search containers within an automobile); *cf. United States v. Cantu*, 405 F.3d 1173, 1178 (10th Cir. 2005) (noting that courts are more likely to affirm an officer's determination of probable cause when backed by a search warrant) (internal citations omitted).

Whitmore makes no plausible argument that any of these searches were impermissible. As a result, his Motion to suppress the evidence, Doc. 47, is denied.

**B**

Whitmore also argues that the Government's search of his cell phone was improper. Doc. 50. His concerns are varied but are generally directed at overbreadth. He seeks suppression because "the warrant permitted a search for evidence of offenses not mentioned in the affidavit." *Id.* at 3, 5 (identifying two subsections focusing on other robberies and arguing there was no probable cause to search for those crimes). But he also contests, even for the Intrust robbery, where on his phone officers could search and what types of information they could look at (*e.g.*, internet search history). That lack of clarity rendered the warrant—according to Whitmore—insufficiently particular and

overly broad. *Id.* at 6–13; *see also id* at 14–15 (arguing that using a forensic tool, officers searched the entire phone and all data).

These arguments will be considered in two categories: particularity and overbreadth. First, Whitmore argues the warrant is completely defective because the warrant failed to particularly describe where the search could occur. And second, Whitmore argues that, even assuming the warrant is sufficiently particular, there was insufficient probable cause to search for other commercial robberies.

**1.** Whitmore's particularity argument is not convincing. The warrant identified the device, the types of information sought, and the specific federal crime. *See* Doc. 50-2 at 3–5. That is all the law requires.

**a.** To conduct a search for evidence, law enforcement generally must have a warrant supported by probable cause that "particularly describ[es] the . . . things to be seized." *Riley v. California*, 573 U.S. 373, 386 (2014). A supporting affidavit establishes probable cause for a warrant when it evinces a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Cotto*, 995 F.3d 786, 796 (10th Cir. 2021) (internal citations omitted).

A warrant that is not particularized violates the Fourth Amendment because it "vest[s] the executing officers with unbridled discretion to conduct an exploratory rummaging through [the defendant's property] in search of criminal evidence." *Cotto*, 995 F.3d at 798 (citing *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 149 (3d Cir. 2002) (Alito, J.)). To be sufficiently particular, a warrant must reasonably limit what material law enforcement can search for and seize. *United States v. Russian*, 848 F.3d 1239, 1245 (10th Cir. 2017).

Applying the particularity requirement to cell phones is difficult and dynamic. Many, like the one at issue here, are powerful computers that also happen to facilitate telephone calls. *See Riley*, 573 U.S. at 393 (describing the ever-evolving smart phone computing power and their capacity to be used as telephones but also as "cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers"). As a result, the Tenth Circuit applies the computer search warrant particularity requirements to cell phone search warrants too. *See generally Russian*, 848 F.3d at 1245. Thus, cell phone warrants are sufficiently particular so long as they limit their scope either to evidence of specific federal crime(s) or specific types

of material likely located on that device. *Id.* (citing *United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013)).

**b.** The warrant here satisfies that standard because the preface (first paragraph) limited the search to "[a]ll records on the Device described in Attachment A that relate to violations of 18 U.S.C. § 2113, namely, Bank Robbery, and involve Shawn Lamar Whitmore, Jr." *See* Doc. 50-2 at 4. That sufficiently and particularly describes what officers could search for on Whitmore's phone. Tenth Circuit law requires no more. *Compare Voss v. Bergsgaard*, 774 F.2d 402, 405 (10th Cir. 1985) (holding the warrant overbroad because it "authorized government agents to rummage through all of [defendant's] files . . . and more, seeking any information pertaining to any federal crime."), *with United States v. Lamport*, 787 F.2d 474, 476 (10th Cir. 1986) (distinguishing *Voss*'s open-ended warrant where the Government "failed to pinpoint the statutes violated or to establish that the alleged crime permeated the business"); *see also United States v. Brooks*, 427 F.3d 1246, 1253 (10th Cir. 2005) (holding a warrant valid where the heading implicitly limited searches to evidence relating to that title).

Defendant's contrary proposed construction cannot prevail. He effectively suggests a hyper-literal analysis that would be more appropriate for interpreting statutory text by relying on the "scope-of-subparts" canon of construction to divorce all non-indented and unnumbered provisions from each other. Doc. 78 at 6, 8 (arguing that "the first subparagraph already authorized the police to seize anything on the phone related to the bank-robbery offense"); *see* Doc. 50-2 at 4. But the Tenth Circuit recognizes that practical accuracy, not technical precision, is the benchmark: "A warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement." *United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009). Rather, the provisions of the warrant must be read in context. *See id.* at 1133 (noting that, in *Brooks*, 427 F.3d 1246, the Tenth Circuit applied a contextual reading that "more naturally" instructed officers to limit their search to only the federal crime at issue).

The context and structure of the warrant confirms that the limitation to the crime of bank robbery was intended to and would be reasonably understood as a limit on any search. In particular, the heading (or "preface," as Whitmore describes it) identifies the device to be searched, the crime at issue, and the individual involved. Doc. 50-2 at 3–5. That preface ends with the word "including" followed by a colon

9

and several subsequent paragraphs separated by semi-colons. Doc. 50-2 at 4. This structure and punctuation signals to a reasonable reader that the heading was intended to apply to all subsequent paragraphs that sought more specific items related to the bank robbery that Whitmore is suspected of committing. *See Brooks*, 427 at 1252; *contra* Doc. 78 at 6–8 (complaining that the first subsection is superfluous).

The Tenth Circuit's decision in *Otero* does not suggest a different conclusion. *Contra* Doc. 78 at 10. There, the warrant at issue was "neatly divided into two subsections: 'ITEMS TO BE SEIZED' and 'COMPUTER ITEMS TO BE SEIZED.'" *Otero*, 563 F.3d at 1132. The Tenth Circuit held invalid the latter subsection because, unlike the former subsection, there was no explicit or implicit limitation on what could be searched. *Id.* at 1132–33. Unlike the unlimited subsection in the *Otero* warrant, the warrant here has several subsections that are, in context, subject to the internal express limitation provided by the heading or preface of the warrant that focuses on the bank robbery. That is enough for particularity. *See Brooks*, 427 F.3d at 1253; *cf. Otero*, 563 F.3d at 1133 (holding invalid the warrant provision authorizing the search and seizure of "any and all information, data, devices, programs, and other materials" because there was no explicit or implicit limitations drawn from the preceding paragraphs).

Tenth Circuit precedent likewise forecloses Whitmore's concern that searching the entire phone would permit unfettered access to his phone's contents (*e.g.*, internet search history or remote storage access). In *Christie*, for example, the Tenth Circuit recognized it is not feasible to require law enforcement officials to know where to search for potential evidence on a computer because suspects may attempt to disguise or hide incriminating information in innocuously named files. 717 F.3d at 1166. Greater computing power on modern cell phones amplifies that risk—evidence may be found in a variety of applications and could include banking data, location history, messaging or social media posts, and internet searches that might reflect planning a crime, executing the plan, and/or avoiding capture following commission of the crime. *Cf. United States v. Loera*, 923 F.3d 907, 916 (10th Cir.), *cert. denied*, 140 S. Ct. 417 (2019) (noting that computers store a vast amount of information that can be found almost anywhere on the computer); *Riley*, 573 U.S. at 393–97 (describing privacy implications smart phone applications raise and the functionalities they can provide). As a result, the Tenth Circuit equates cell phone searches to computer searches, *Russian*, 848 F.3d at 1245, and reviews a search for reasonableness after

it occurs based on how the search was carried out rather than how the warrant described it.³ *See Loera*, 923 F.3d at 917.

Whitmore made no suggestion that the individual(s) executing the search of his phone engaged in improper "exploratory rummaging." *Christie*, 717 F.3d at 1164; *see also Loera*, 923 F.3d at 917–19 (distinguishing between impermissible rummaging that exceeded the search's purpose and permissible conduct that inadvertently uncovered other crimes, including through the use of a forensic device). Instead, the search appears to have proceeded consistently with the areas of inquiry contained within the warrant. As a result, his particularity argument fails.

**2.** In contrast, Whitmore's overbreadth argument does raise a valid constitutional concern. Specifically, he contends that the affidavit failed to mention any other robbery, much less offer facts sufficient to establish probable cause that Whitmore was responsible for committing additional commercial robberies. Doc. 50 at 5–6; Doc. 50-1 at 21. This is an overbreadth concern: an overly broad warrant is one that "'describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause.'" *Cotto*, 995 F.3d at 798 (quoting *Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d at 149).

**a.** The warrant here is overbroad because the supporting affidavit includes no information about Whitmore's possible or suspected involvement in any other crimes. It only describes the investigation that led officers to believe that Whitmore robbed the Intrust Bank. Doc. 1-1, ¶¶ 8-31. While it does not purport to be a comprehensive description of Harvey's knowledge about the Intrust robbery, *see id.* at ¶ 5, the

---

³ The Fifth Circuit recently took a different approach. *See United States v. Morton*, 984 F.3d 421 (5th Cir. 2021) (holding that a search warrant for a cell phone search is only reasonable when there is separate probable cause to search each category of information found on cell phones, such as text messages, photographs, video). That decision, however, will be reheard by the Fifth Circuit sitting *en banc* in September 2021. *See* 2021 WL 1990794 (May 18, 2021). A respected Fourth Amendment scholar has suggested the approach discussed in *Morton* is inconsistent with *Riley* and the goals of the Fourth Amendment. *See* Orin Kerr, *Remarkable New Fifth Circuit Decision Limiting Cell Phone Searches: Remarkable but wrong, I think -- although, in my view, the correct result in this case for other reasons.*, The Volokh Conspiracy: L. Blog (January 10, 2021, 5:20 pm), https://reason.com/volokh/2021/01/10/remarklable-new-fifth-circuit-decision-limiting-cell-phone-searches/#. Regardless, the Tenth Circuit rule applies to this case.

affidavit contains no information about other crimes or why anyone would believe Whitmore might have committed such a crime or crimes.

The Government does not meaningfully argue to the contrary. Instead, it relies on testimony Harvey gave at the suppression hearing to suggest that, in Harvey's experience, those capable of committing a relatively sophisticated crime like the Intrust robbery probably committed other, less sophisticated crimes first. Doc. 74 at 5. And Harvey testified about a few crimes committed around the same time as the Intrust robbery that he believed Whitmore might have committed. It is unlikely that Harvey's speculation or hunch—without more—could establish probable cause for these other commercial robberies. But even assuming it might, that speculation was not contained within the affidavit's four corners. While it is possible Harvey provided that context to the Magistrate Judge, he testified that he could not recall providing that context when applying for that warrant. That lack of support is fatal to the Government's position. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and . . . [s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his [or her] action cannot be a mere ratification of the bare conclusions of others.").

**b.** When a warrant is overbroad, the "suppression of evidence should be 'a last resort, not a first impulse.'" *Cotto*, 995 F.3d at 798 (quoting *United States v. Sells*, 463 F.3d 1148, 154 (10th Cir. 2006)). Rather, where possible, the Tenth Circuit applies the severance doctrine, which separates the valid from invalid provisions and admits only materials seized under the lawful provisions. *Id.*

A severance analysis is a three-step endeavor. *Cotto*, 995 F.3d at 799. First, the Court must divide the warrant in a commonsense way. Second, it must evaluate each section's validity. And third, it must determine whether the sections can be distinguished from one another. *Id.* Practically speaking, the valid portions can be severed when each item or describes category distinct subject matter not linked to language of the other, improper categories and when each retains its significance if isolated from the invalid portions. *Id.*

For the first step, the best way to divide the warrant is to evaluate its contents on a line-by-line basis. *See* Doc. 50-2 at 4. The parties mostly agree. Doc. 78 at 8–10; Doc. 74 at 8. There are only ten

subsections and all fall under the single, overriding preface describing the bank robbery that Whitmore is alleged to have committed. Doc. 50-2 at 4.

Second, determining each subsection's validity is not difficult because all but two of the subsections are focused on bank robbery. The two that are not seeking information about the bank robbery are focused on other commercial robberies. Doc. 50-2 at 4. These two provisions are invalid because they lack any support in the affidavit and are not logically related to, or derivative of, the bank robbery. *Contra* Doc. 74 at 5–6.

In contrast, the affidavit amply supports probable cause for the eight other subsections. Not only does Harvey credit his knowledge and training for leading him to conclude that individuals committing crimes frequently use their cell phones to plan, communicate, and avoid detection, but the affidavit also describes how the Intrust robber used his phone during the robbery to communicate with someone outside the bank and how law enforcement tied this particular phone to Whitmore. Doc. 50-1, ¶¶ 1–30. That is enough to satisfy the constitutional requirements for the other eight subsections. *See United States v. Knox*, 883 F.3d 1262, 1275 (10th Cir. 2018) (describing the "fair probability" probable cause standard for issuing a warrant).

Third, distinguishing the subsections is simple. All but two seek evidence pertaining to the Intrust robbery. Because the two provisions concerning the other commercial robberies are unlinked to either the bank robb8899ery or the other eight valid subsections, those two are severable. *See Cotto*, 995 F.3d at 800 (citing *Sells*, 463 F.3d at 1158) (noting that severance is possible only where the invalid portions do not "so predominate the warrant that [it] in essence authorizes a general, exploratory rummaging in a person's belongings."). As a result, any evidence seized under those two subsections must be suppressed. *Id.* at 798.

The good-faith exception cannot save the evidence of other robberies obtained from this warrant. *See Cotto*, 995 F.3d at 796 (citing *Knox*, 883 F.3d at 1273); *see also* Doc. 74 at 6. That exception does not apply when the supporting affidavit is completely devoid of factual support, *see United States v. Henderson*, 595 F.3d 1198, 1201–02 (10th Cir. 2010), which the Government concedes is the situation here in regard to other robberies, Doc. 74 at 6. That is not to say that the officers executing the search engaged in bad faith. Instead, Harvey's testimony

suggested the failure to provide factual support in the affidavit was an oversight. While the threshold for overcoming the presumption of an officer's good faith is justifiably high, *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012), its application cannot exist to excuse a total absence of support to search for unrelated criminal conduct. *See Knox*, 883 F.3d at 1273 (holding courts cannot consider new information that was undisclosed to the issuing magistrate when considering the good-faith exception).

### III

Whitmore's Motion to Exclude evidence (Doc. 47) is DENIED. Whitmore's Motion to Suppress evidence (Doc. 49) obtained from his cell phone is GRANTED in part and DENIED in part. The two subsections relating to the search for evidence of other robberies are overbroad and must be severed.

It is so ordered.

Date: June 24, 2021         s/ Toby Crouse

                                             Toby Crouse
                                             United States District Judge